UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIA EGAN, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 9034 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| HUNTINGTON COPPER, LLC, HUNTINGTON | ) | |
| COPPER MOODY MACGUIRE, HCMM, INC., | ) | |
| PATRICK MACGUIRE, DAVID PINEDA, ROBERT | ) | |
| POPKEY, WILLIAMS SHAPCOTT, and JOHN MORRIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Julia Egan brought this employment suit against several defendants. One of the

defendants, David Pineda, who is *pro se*, filed a motion to dismiss for lack of personal

jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and

12(b)(6). Doc. 19. The court deemed the motion to be not only a motion to dismiss, but also a

motion to vacate a technical default against Pineda. Doc. 20 (Conlon, J.). After the case was

reassigned to the undersigned judge, the court granted the motion to the extent it sought to vacate

the technical default and entered and continued the motion otherwise. Doc. 54.

The court now considers the portion of the motion that seeks dismissal under Rule

12(b)(2) for lack of personal jurisdiction. A federal court's "exercise of jurisdiction over the

defendant must be authorized by the terms of the forum state's personal-jurisdiction statute and

also must comport with the requirements of the Fourteenth Amendment's Due Process Clause."

*Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The Illinois long-arm statute permits a

court to exercise personal jurisdiction "on any … basis now or hereafter permitted by the Illinois

Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c). Because "there is

1

no operative difference between these two constitutional limits," a federal court sitting in Illinois and evaluating a Rule 12(b)(2) motion asks "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ibid.* (internal quotation marks omitted). The Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum state." *Id.* at 444 (internal quotation marks omitted). To be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum state' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp. Ltd. v. Wash. Reg. Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists Chicago*, 623 F.3d at 444. Egan pursues only a theory of general jurisdiction against Pineda, Doc. 21 at 7-9, and therefore has forfeited any argument that specific jurisdiction lies over him. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("RAR has never alleged that Turner has such systematic contacts with Illinois. RAR has thus waived any general jurisdiction argument, and we may focus exclusively on specific jurisdiction.") (citation omitted). "A defendant is subject to general

jurisdiction when it has 'continuous and systematic general business contacts' with the forum state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). "This is a demanding standard," *id*. at 426, that "requires that the defendant be 'essentially at home' in the forum." *Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Although factual disputes are resolved in the plaintiff's favor on a Rule 12(b)(2) motion, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003) (footnote omitted). Egan was employed by one or more of the entity defendants—the parties dispute the identity of Egan's employer(s), but there is no need to resolve the dispute for purposes of this motion—in California. Doc. 1 at ¶ 22. The complaint alleges that Pineda had an "ownership interest in Huntington [the term Egan uses to describe her employer], maintain[ed] day-to-day control over [Egan's] activities, and maintain[ed] control over the essential functions of the business." *Id*. at ¶ 12. Egan's brief asserts that "Pineda personally and through his agents acting upon his behalf and at his direction, had continuous and systematic contact with the State of Illinois during 2011, as they were making sales, soliciting sales, and providing business consulting services to business [sic] within Illinois out of the LLC's office located in Deer Park, Illinois." Doc. 21 at 8. To support this assertion, Egan submits several exhibits: Huntington's registrations with the North Carolina and Illinois Secretaries of State showing that it was registered in North Carolina, that its principal place of business was Ohio, and that it had an agent in Illinois, Doc. 22-1 at 1-2; Doc. 22-4; and Better

Business Bureau printouts showing Huntington had an office in Illinois and that complaints were filed against it by Illinois customers in 2011, Doc. 22-2 at 1-2; Doc. 22-3 at 1-2.

Given these materials, as well as Pineda's admission that Huntington was "authorized to do business in almost every state" and did a "small fraction of [its] business" in Illinois, Doc. 19 at 2-3, 10 (¶ 4), Egan has established that *Huntington* had contacts in Illinois. But the question here concerns *Pineda's* contacts with Illinois. On that subject, Pineda submits an affidavit averring that he has lived in Florida for the past ten years and in Pennsylvania before then, and that during Pineda's eighteen-month tenure at Huntington, he commuted from Florida to Huntington's headquarters in Ohio, where his primary responsibility was the day-to-day supervision of the Analysis Department. Doc. 19 at 9-10 (¶¶ 2-3).

In an effort to counter Pineda's evidence and support her submission that Pineda "resided in Illinois," Doc. 21 at 8, Egan frivolously argues that records obtained from the Cook County Recorder of Deeds show that "David Pineda" owns "four residential properties in Chicago, Illinois; one residential property in Oak Forest, Illinois; and one residential property in Lynwood, Illinois at various times throughout the last several decades, including the present." Doc. 21 at 5. Those records fall far short of qualifying as "affirmative evidence" that our David Pineda lived in Illinois. *Purdue Research Found.*, 338 F.3d at 783. The records show only that properties in Illinois are owned by one person or some people named "David Pineda." Doc. 29 at 5. "David Pineda" is not an uncommon name; a search of www.whitepages.com (visited Feb. 14, 2014) shows that several David Pinedas reside in Illinois and that several dozen live in the United States. Egan provides no basis whatsoever to conclude or even suspect that one of the David Pinedas (or the David Pineda) who owns property in Illinois is our David Pineda.

Egan alternatively and implicitly suggests that the Huntington's contacts in Illinois

should be imputed to Pineda for purposes of deciding whether general jurisdiction lies over

Pineda. Doc. 21 at 8-9. This suggestion is contrary to settled precedent holding that a business's

contacts cannot be attributed to individual officers or directors for purposes of determining

whether personal jurisdiction lies over the individuals. *See Young v. Colgate-Palmolive Co.*, 790

F.2d 567, 569-70 (7th Cir. 1986) ("the individual board members cannot be said to have

transacted business within Illinois merely because the corporation is qualified to do business

here") (citing *Mergenthaler Linotype Co. v. Leonard Storch Enters., Inc.*, 383 N.E.2d 1379, 1385

(Ill. App. 1978) (The "plaintiff … has apparently assumed that if jurisdiction is found as to the

[corporation] … it must automatically follow that jurisdiction exists as to the claim against [the

president]. But this is not so. … Any transaction of business with Illinois residents was by the

corporation and not by the employee individually.") (alterations in original)); *W. Va. Laborers*

*Pension Trust Fund v. Caspersen*, 829 N.E.2d 843, 849 (Ill. App. 2005) ("As in *Mergenthaler*

and *Young*, personal jurisdiction must be established by the individual employee's acts and not

the acts of the corporation."); *Olinski v. Duce*, 508 N.E.2d 398, 400 (Ill. App. 1987) ("A

conclusion that a foreign corporation is subject to Illinois jurisdiction does not require the further

conclusion that an employee, shareholder, president, or member of the board of directors of that

corporation is also subject to Illinois jurisdiction."); *Continental Cas. Co. v. Marsh*, 2002 WL

31870531, at *6 (N.D. Ill. Dec. 23, 2002) (holding that a company's contacts in Illinois "do[] not

establish that [the defendant], as opposed [the company], had any personal ties to Illinois"); *Berg*

*v. Anderson*, 1995 WL 476671, at *5 (N.D. Ill. Aug 8, 1995) ("However, Anderson, who is sued

individually, must be distinguished from the corporation of which he is an officer and a majority

shareholder. None of the materials submitted to the Court indicate that Anderson has sufficient

systematic and continuous contacts with the State of Illinois such that he might reasonably anticipate being haled into court in Illinois.") (footnote omitted).

Egan's invocation of the fiduciary shield doctrine, Doc. 21 at 9, fares no better. The doctrine prevents a court assessing whether personal jurisdiction lies over an agent from considering contacts that agent made in the State on behalf of his or her employer. *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001) ("Illinois employs the fiduciary-shield doctrine, under which a person who enters the state solely as fiduciary for another may not be sued in Illinois.") (citation omitted); *Rollins v. Ellwood*, 565 N.E.2d 1302, 1318 (Ill. 1990) (deeming it "unfair and unreasonable … to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal"). Egan correctly argues that doctrine generally does not apply to shareholders and owners of companies because they act in their personal interest while pursuing their company's business. *See Elsner v. Brown*, 996 N.E.2d 84, 95-97 (Ill. App. 2013); *Fountain Marketing Grp., Inc. v. Franklin Progressive Resources, Inc.*, 1996 WL 406633, at *4 (N.D. Ill. Aug. 22, 1996) ("The fiduciary shield defense does not apply if the employee in question was also (or instead) acting to 'serve his personal interests.' For example, an individual who is a high-ranking company officer or shareholder has a direct financial stake in the company's health and can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit.") (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912-13 (7th Cir. 1994)). But the doctrine plays no role where, as here, the shareholder or owner (Pineda) has no contacts with the forum (Illinois) in the first place. *See Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, 2007 WL 1560212, at *3 (N.D. Ill. May 29, 2007) ("In order for the fiduciary shield doctrine to apply, the individual first must have minimum

contacts with the forum state sufficient to establish personal jurisdiction. … Plaintiff cannot use the fiduciary shield doctrine to expand this Court's exercise of personal jurisdiction—the fiduciary shield is just that, a shield, not a sword.").

For the foregoing reasons, Pineda's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is granted. The claims against Pineda are dismissed without prejudice. *See Sikhs for Justice v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013) ("Ordinarily a dismissal for want of personal jurisdiction as a result of improper service is without prejudice, leaving the plaintiff free to refile the suit and seek to serve the refiled complaint on the defendant."). This disposition makes it unnecessary to resolve Pineda's Rule 12(b)(6) motion to dismiss for failure to state a claim, which is denied without prejudice as moot.

February 14, 2014

_____
United States District Judge

7