UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIA EGAN, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 9034 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| PATRICK MAGUIRE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Julia Egan brought this suit against HCMM, Inc., Patrick Maguire, David Pineda, and others, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Doc. 1. The court dismissed Pineda for lack of personal jurisdiction, Docs. 85-86 (reported at 2014 WL 585316 (N.D. Ill. Feb. 14, 2014)), granted summary judgment to HCMM and Maguire, who at that point were the sole remaining defendants, Docs. 162-163 (reported at 2015 WL 1396187 (N.D. Ill. Mar. 24, 2015)), and entered final judgment, Doc. 164. The court then granted Pineda's motion for sanctions against Egan's attorney, Lewis G. Spicer of the Levine & Blit firm in New York. Docs. 170-171 (reported at 2015 WL 1631547 (N.D. Ill. Apr. 10, 2015)). Egan did not appeal the underlying judgment. Spicer appealed the sanctions, and the Seventh Circuit affirmed, finding that Spicer's "excuses" for his conduct were "pathetic" and holding that the $5,000 sanction "was amply justified." *Egan v. Pineda*, 808 F.3d 1180, 1181 (7th Cir. 2015).

Shortly after the court granted Pineda's sanctions motion and well before Spicer's appeal was resolved, HCMM and Maguire moved for sanctions under Civil Rule 11 against Spicer and

1

Levine & Blit (together, and for ease of reference, "Spicer"), Doc. 172, and under the court's inherent authority against Spicer, Doc. 188. (HCMM and Maguire served the Rule 11 motion near the outset of this case and, consistent with Rule 11(c)(2), waited more than 21 days to file it.) The court denied the Rule 11 motion to the extent it was brought by HCMM. Doc. 174. After the Seventh Circuit affirmed the Pineda sanctions, the court urged Maguire, HCMM, and Spicer to reach an accommodation as to the remaining sanctions motions. Doc. 224. The parties reported that they could not reach an accommodation. Doc. 229. At the next hearing, the court in an oral ruling denied the inherent authority motion, and again urged Maguire and Spicer to resolve the Rule 11 motion. Doc. 233. When they were unable to do so, the court in a minute order granted in part Maguire's Rule 11 motion, sanctioning Spicer "in an amount equal to the marginal cost (including attorney fees and costs) of defending … Maguire after Billie Curry's deposition," directing the parties to address in supplemental filings the appropriate amount of fees and expenses, and stating that a consolidated opinion would address all issues. Doc. 234.

It was the court's hope that Maguire and Spicer would take this last opportunity to resolve the matter without the court issuing another opinion (this court's second, the third overall) finding that Spicer had engaged in sanctionable conduct. That did not happen, so this opinion—which the court set to the side for quite some time (in retrospect, too long) in the (vain) hope that (for Spicer's sake) it would not have to be issued—unfortunately must issue. The court assumes familiarity with its opinion granting Pineda's sanctions motion, which sets forth other distressing aspects of Spicer's performance in this case and thus shows that the sanctionable conduct described below was, for Spicer, the rule rather than the exception. 2015 WL 1631547, at *6-7.

It is appropriate to begin with the summary judgment ruling. Egan (via Spicer) conceded that Maguire could not be held liable under Title VII because he was not Egan's "employer" within the meaning of that statute. 2015 WL 1396187, at *3. The court then held that Egan could not prevail under the IHRA due to her failure to exhaust; Egan attempted to invoke an equitable exception to the exhaustion requirement, but the court held that she forfeited the point "[b]y failing to provide any legal or factual support." *Ibid*. Finally, the court held that Egan could not prevail under the EPA or the FLSA because the summary judgment record indisputably demonstrated that Maguire was not an "employer" within the meaning of those statutes. *Id*. at *3-4.

The EPA and FLSA ruling is most significant for present purposes. "The word 'employer' is defined broadly enough in the [FLSA] (of which the [EPA] is an amendment) to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). As the court explained, the summary judgment record indisputably established that Maguire founded the predecessor to the firm that ultimately employed Egan, sold the predecessor firm in July 2010, stayed on as a consultant with the successor firm to keep his health benefits, but performed no work for the successor. 2015 WL 1396187 at *1. Egan joined the successor firm in February 2011, well after the sale, and the record demonstrated that Maguire never served as her supervisor and thus could not be liable under the FLSA or the EPA. *Id*. at *2, *4. Egan quarreled on summary judgment with the proposition that Maguire did no work for the successor firm after July 2010, arguing that he continuously attempted to exert influence over the successor, but the only evidentiary materials she cited were immaterial. *Id*. at *1 n.*.

That the record developed in a way that defeated Egan's FLSA and EPA claims against Maguire of course does not, by itself, warrant sanctions. The pertinent question, rather, is whether Spicer performed an adequate pre-suit investigation into whether Maguire was Egan's supervisor within the meaning of the FLSA and the EPA, and whether he had a good-faith basis for believing—and, as discovery progressed, continuing to believe—that the answer was yes. *See Fiala v. B&B Enters.*, 738 F.3d 847, 852 (7th Cir. 2013). To evaluate that question, it is necessary to return to the case's beginning.

The complaint alleged in Paragraph 11 that, "[a]t all times relevant," Maguire "maintain[ed] day-to-day control over the activities of [Egan], maintain[ed] control over the essential functions of the business, and/or retain[ed] the authority to control [Egan's] conditions of employment, including rate of compensation and termination," rendering him "personally liable for violations of the applicable statutes alleged herein." Doc. 1 at ¶ 11. After the litigation began in earnest, Maguire served on Spicer a Rule 11 motion, which stated that those allegations were false, that Maguire's sole connection with Egan's employer (the successor firm) was as a consultant, that he exercised no supervisory authority over Egan, and that Spicer could not have conducted an adequate pre-suit investigation into the matter. Doc. 172-1 at 8-10. Maguire's counsel followed up with two letters making essentially the same point. Doc. 188-6 at 4-6.

Spicer did not withdraw Egan's claims against Maguire. Spicer's explanation is that Billie Curry, Egan's coworker and another client of his with a similar suit in the Northern District of New York against many of the same defendants, had told him that Maguire continued to play a management role at the firm after the sale. Doc. 200 at 6-7; Doc. 200-2 at 6-7. The court will give Spicer the benefit of the doubt that Curry in fact told him this about Maguire's role at the successor firm. The trouble is that Spicer learned during discovery that this

characterization of Maguire's role was wrong. At her deposition on January 29, 2014, Egan testified that Curry was the sole source of what she knew about Maguire's role. Doc. 130-3 at 16-17, pp. 57-58; *id*. at 20-21, pp. 73-75. And at her deposition on April 24, 2014, and again at the deposition's continuation on May 7, 2014, *Curry* testified that she had no knowledge of Maguire's role in the day-to-day operations of the successor firm and did not know whether he controlled hiring, firing, compensation, or promotion as to Egan's regional vice president position. Doc. 131-1 at 16, p. 46; *id*. at 40, pp. 136-38.

So, as of April 24, 2014, Spicer knew full well that Egan's submission (which rested on Curry's initial say-so, which collapsed at Curry's deposition) that Maguire was a supervisor at the successor firm, and thus an "employer" for FLSA and EPA purposes, was incorrect. The only appropriate course at that point was to voluntarily dismiss at least the FLSA and EPA claims (and, while he was at it, the Title VII claims) against Maguire. Instead, and despite the Rule 11 motion that had been served on him near the outset of the case—a letter that, at least as to Maguire, had been proved correct by Curry's testimony—Spicer persisted, requiring Maguire to move for and brief summary judgment, Docs. 131-132, 144, 147, 151, and making extraordinarily weak arguments in response, 2015 WL 1396187 at *3-4.

Indeed, at the Rule 11 motion hearing, Doc. 233, Spicer and his law partner all but admitted that they knew that Curry's deposition testimony sank Egan's FLSA and EPA claims against Maguire, but that they pressed on in an effort to extract a settlement from him and HCMM in both Egan's and Curry's cases:

> THE COURT: So, the Curry deposition was in April of 2014?
> MR. SPICER: Correct.
> THE COURT: So, at that point, … why did you persist in suing [Maguire]?

5

> MR. SPICER: Because, your Honor, at that point, we were trying to resolve this matter, trying to settle this matter both Ms. Egan's matter and Ms. Curry's matter in the Northern District of New York. There was no—and we were trying to essentially resolve it at the very almost nominal value to settle the case at that point.
>
> THE COURT: But if you knew from Curry's deposition that you didn't—what you had alleged about [Maguire's] involvement and supervision was not true, why … at that point didn't you say we're going to drop [Maguire] …—it would have been a little late, it would have been outside the [Rule 11(c)(2)] safe harbor, but still, you'd have been on better paper had you done that.
>
> MR. SPICER: I think, your Honor, as a practical matter, during that time, we were still trying to resolve the matter with HCMM as well …—Mr. Allen represented both Mr. Maguire and HCMM. So, we were trying to resolve the matter, and then Mr. Allen proceeded with filing [summary judgment] motions.
>
> THE COURT: Right. Mr. Allen had to file the motion for [Maguire] in June of 2014, which was two months after Curry had testified in a way that undermined paragraph 11 of the complaint, right?
>
> MR. SPICER's PARTNER: Correct.
>
> THE COURT: So, you did have time to bail out on [Maguire] between Curry's deposition when she fatally undermined paragraph 11 and June of 2014 when [Maguire] had to move for summary judgment.
>
> MR. SPICER: The way you put it, obviously, there was a two-month gap in there, your Honor, but again, there was discussions of settlement with Mr. Allen to resolve all matters, and Mr. Allen—there was no—there was never any suggestion that Maguire will be dismissed out of the action and we'll settle HCMM. Obviously, we're going back two years, your Honor, I can't put myself back in that time frame, but my recollection of that is there were some settlement discussion that … did not work out. I certainly understand what your Honor is saying.
>
> THE COURT: Okay.
>
> MR. SPICER: Yes, there was time between Ms. Curry's deposition and the filing of the summary judgment motion.

And in his last brief filed on the sanctions issue, Spicer admitted: "Only after depositions, while analyzing all the facts to oppose the motions for summary judgment, did Mr. Spicer realize there

6

was nothing to hold Mr. Maguire in. So, he essentially 'punted' the opposition, barely putting up a fight to keep him in." Doc. 240 at 3.

Good grief. Spicer knew that Egan had no case against Maguire, but he nonetheless required Maguire to spend the time, effort, and money moving for summary judgment; moreover, he required the court to expend its time and effort resolving Maguire's motion when that time and effort could have been devoted instead to some of the three hundred or so other cases on its docket, cases with parties and lawyers who actually believes in the positions they were advancing. That is beyond inexcusable. It should go without saying, but when a lawyer learns during discovery that his client's case against one defendant has fallen apart, the only proper course is to dismiss that defendant and press on against the others. It is sanctionable to continue the case against the exonerated defendant, particularly to press on in the hopes of using the claim to extract some sort of settlement, either global or individual. *See Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) (rejecting the argument that the propriety of a Rule 11 sanction "focuses solely on the knowledge [the attorney] had as of the date of its filing of the case," and affirming sanctions against an attorney who "continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that deficiency was pointed out").

The appropriate sanction here is the amount Maguire expended to defend the suit after Spicer learned during the Curry deposition that Maguire had no supervisory role at the successor firm. *See* Fed. R. Civ. P. 11(c)(4) ("The sanction may include … part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *Golden v. Helen Sigman & Assocs.*, 611 F.3d 356, 365 (7th Cir. 2010). The same defense counsel represented Maguire and HCMM and billed them together, so counsel's fees and expenses must be apportioned between them, with the sanctions being limited to the Maguire representation.

7

Maguire contends, and the backup materials confirm, that he and HCMM incurred $52,080.50 in attorney fees (for 253 attorney and paralegal hours) and $2,600.07 in expenses after April 24, 2014, the first day of the Curry deposition. Doc. 236 at 2, 6. Maguire asserts that, as to the fees, $3,982.50 was devoted exclusively to him, $3,352.50 exclusively to HCMM, and $44,745.50 to them together; he proposes that half of the $44,745.50 be allocated to him and half to HCMM, and that half the expenses be allocated to him as well, for a total of $27,655.29 ($26,355.25 in fees and $1,300.04 in expenses). *Id.* at 2-3.

Spicer does not challenge defense counsel's hourly rate ($225), which given counsel's experience and skill is more than reasonable. Spicer does dispute the reasonableness of the hours expended, as well as their allocation between Maguire and HCMM. Doc. 240 at 4-14.

First, Spicer contends that most of what Maguire characterizes as joint attorney time was devoted to HCMM and the HCMM-specific question of successor liability, and therefore that the allocation of the $44,745.50 should not be 50/50. *Id.* at 5-9, 11 (bullet #1). Maguire retorts that the facts pertinent to the successor liability issue also were pertinent to the FLSA and EPA employer issue, and therefore that the time devoted to those matters should be split evenly between him and HCMM. Doc. 241 at 3-6. Based on its review of the invoices, Doc. 236-2, and familiarity with the briefing and underlying materials for Maguire's and HCMM's respective summary judgment motions, the court finds that the $44,745.50 in joint attorney time should be allocated 40% to Maguire and 60% to HCMM. This allocation is not based on calling balls and strikes for each individual line-item on the invoices; rather, as permitted by precedent, it rests on a general but well-informed sense of the invoices and the parties' summary judgment materials. *See Golden*, 611 F.3d at 365 ("Given the fact-intensive nature of [apportioning fees among claims], district courts enjoy a great deal of discretion in formulating and applying a fee

8

calculation methodology."); *Divane v. Krull Elec. Co.*, 319 F.3d 307, 317 (7th Cir. 2003) (holding that the district court did not abuse its discretion "in determining that an analysis of each line-item entry in the petition was overburdensome and unlikely to produce a reliable result" where the court was tasked with apportioning fees among claims that were "closely interwoven factually and legally"); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("[I]t is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application.").

Second, Spicer argues that Maguire overstates the total number of hours that were reasonably expended. Spicer maintains that sanctions should reflect only the attorney time billed after the second segment of the Curry deposition concluded on May 7, 2014. Doc. 240 at 9. The court disagrees, for Curry first admitted her lack of knowledge as to Maguire's supervisory role (or lack thereof) at the successor firm on April 24, 2014, the day of the deposition's first segment. Doc. 131-1 at 16, p. 46. Spicer next argues that hours expended on matters related to Pineda's sanctions motion should be excluded. Doc. 240 at 9-10. That is a valid objection, as the Pineda motion had nothing to do with Maguire's defense, and so six attorney hours will be deducted. Spicer also is correct that he should not be charged for any part of the 20.6 hours expended on the inherent authority sanctions motion. *Id*. at 10; Doc. 240-2. As the court explained on the record, that motion did not have merit, and it therefore is not something for which Maguire reasonably can expect to recover. Spicer's challenges to various line items, Doc. 240 at 11-12, are largely meritless but well-taken in part, warranting the deduction of an additional 3.5 hours. Maguire agrees with the rest of Spicer's objections, Doc. 241 at 9, which results in the deduction of 1.7 additional hours.

So, all told, the court deducts $7,155 ($225 multiplied by 31.8 hours) from the $44,745.50 in jointly incurred attorney fees, leaving $37,590.50. Forty percent of that figure is $15,036.20, which when added to the $3,982.50 for time devoted exclusively to Maguire results in an attorney fee award of $19,018.70.

As to expenses, Spicer objects to the costs of the Curry deposition transcripts. Doc. 240 at 13. Those objections are overruled in part. As Maguire explains, the cost of those transcripts was high given their length. Doc. 241 at 8-9. But Maguire agrees that the cost of one of the transcripts should not be assessed, resulting in a deduction of $538.77 from the joint expenses of $2,600.07. Allocating half of the remaining $2,061.30 to Maguire results in an expense award of $1,030.65.

In sum, the court grants Maguire's Rule 11 motion against Spicer and Levine & Blit, PLLC, in the amount of $20,049.35. That amount shall be paid by September 4, 2018. Spicer and his firm should consider themselves fortunate that the court did not impose any "nonmonetary directives" or require them to "pay a penalty into court," Fed. R. Civ. P. 11(c)(4), as part of the sanction.

August 13, 2018

United States District Judge